WILLIAM CARLISLE ET AL. v. MRS. SALLIE GIBBS ET AL.

Decided November 14, 1906.

1.—Presumption of Grant—Question of Fact.

The presumption of a grant arising from possession and other circumstances is one of fact and not of law.

2.—Parol Transfer of Land Certificates and Land.

Land certificates could be sold and transferred by parol; and, prior to 1840, the civil law being in effect in Texas, verbal sales of land were recognized.

3.—Same—Charge of Court.

The use of the words "granted and conveyed" in a charge was calculated to produce the impression in the minds of the jury that the conveyance must be, prior to 1840, as at the present time, by a memorandum in writing. It was therefore error to refuse a requested instruction to the effect that, prior to the 18th day of January, 1840, lands in Texas, or right to lands, could be sold and conveyed by parol sale with the same effect as in writing. Facts considered, and held to require the giving of said special charge.

4.—Presumption of Grant—Charge Approved.

Under the facts of this case the court should have charged the jury that if R., her heirs, and those claiming under and through her, have openly, publicly and notoriously occupied, held and claimed the land in controversy since the patent issued to McK., and that McK. or his heirs, or those claiming under McK., have not claimed or asserted title to said land for thirty years after the issuance of the patent, then they would be authorized to presume that McK. did, by parol sale or by deed, prior to January, 1840, convey said land to R.

5.—"Statement'" in Brief, not Sufficient.

It is not a compliance with the rules to make no statement in the brief of the evidence in support of a proposition, except a reference to different parts of the record.

6.—Executed Contract—Consideration.

A litigant having executed to his attorneys a deed for a part of the land recovered by suit, in pursuance of a contract previously made, the sufficiency of the consideration for such conveyance could not be enquired into in a subsequent suit concerning the land between other parties.

7.—Proof of Equitable Title—Circumstantial Evidence.

Where it is sought to show by circumstantial evidence that, although the legal title to land is in one person, the equitable or real title is in another, the law is very liberal in permitting the introduction of any and all circumstances, however slight, tending to prove or disprove the issue. Testimony considered, and held not relevant even under this liberal rule.

8.—Claim of Title—General Notoriety.

Where it is sought to show the existence of a lost deed by circumstances, general notoriety of claims of title by the supposed grantee is competent evidence. This, however, must be distinguished from general reputation as to ownership.

Appeal from the District Court of Trinity County. Tried below before Hon. Gordon Boone.

*Hill & Hill* and *Stevenson & Stevenson,* for appellants.—The charge must conform to the evidence. Sayles' Ann. Civil Statutes, art. 1317;

Thompson v. Shannon, 9 Texas, 537; Adams v. Weakley, 35 Texas Civ. App., 372.

Propriety of charge must be determined by the evidence adduced. Ayers v. Harris, 64 Texas, 299, 300; Case v. Jennings, 17 Texas, 662; Hickey v. Behrens, 75 Texas, 500; 1 Sayles Practice, sec. 570; Hughes Instructions to Juries, secs. 1, 86.

If the court's instructions complained of could possibly in any way be construed as correct, the repetition often made gave the issue undue prominence, and the only deduction to be drawn from the charge by the jury was that the court entertained the view that such "grant or conveyance" had not been made. Gulf, C. & S. F. Ry. v. Harriett, 80 Texas, 81; Cross v. Kennedy, 66 S. W. Rep., 318; Chisum v. Chestnutt, 36 S. W. Rep., 758 (Rehearing); Pelfrey v. Texas C. Ry., 73 S. W. Rep., 411; Kroeger v. Texas & Pac. Ry., 30 Texas Civ. App., 87; Brady v. Georgia H. Ins. Co., 24 Texas Civ. App., 466; Ratto v. Bluestein, 84 Texas, 57; Continental Ins. Co. v. Pruitt, 65 Texas, 130; Hughes' Instructions to Juries, 1905, p. 23, sec. 25.

January 20, 1840, the common law was adopted in Texas and prior to that time the Spanish law was in force. Under the latter law lands or interest in lands could be sold by parole. The certificate for the Polly Ryan league and labor of land was issued March 1, 1838, to James McKim, assignee; surveyed April 18, 1838, and patented October 29, 1845. The pleadings of Polly Ryan and James McKim in the suit of Hugh Jackson v. Polly Ryan and James McKim fix May 20, 1838, as the time when they jointly began to own, possess and claim the Polly Ryan league and labor of land under certificate 200 in name of James McKim, assignee. Prior to January 20, 1840, a parole sale made by James McKim to Polly Ryan, or any contract or agreement between them as to the interest of Polly Ryan reserved in the land, though the certificate was then in the name of McKim, assignee, and though patented subsequently in the name of James McKim, assignee, would have been valid. Therefore the court erred in refusing to charge the jury as requested by appellants, that "prior to and before the 18th day of January, 1840, lands in Texas, or right to land, could be sold and conveyed by parole sale with the same effect as if in writing." 2 Gammell's Laws, p. 177; Paschal's Digest, arts. 804, 978; Hartley's Digest, art. 127; Sayles' Early Laws, art. 707, sec. 1; Courand v. Vollmer, 31 Texas, 397; Monroe v. Searcy, 20 Texas, 348; Sullivan v. Dimmitt, 34 Texas, 123-125; Manchaca v. Field, 62 Texas, 141; Henderson v. Casiano, 7 Texas, 335; Texas Tram & Lbr. Co. v. Gwin, 52 S. W. Rep., 111; Downs v. Porter, 54 Texas, 60, 61; 1 White's New Recopilacion (1839), p. 185; 1 Domat's Civil Law (Cushing's ed.), p. 197; arts. 259, 260; Saunders Justinian (5 ed.), Tit. 23, Lib. 3, pp. 356, 357, 359, 360 and sec. 3; Howe's Civil Law (2 ed.), p. 213. Sale annulled by mutual consent. 1 White's New Recopilacion (1839), p. 196, p. 197, cap. 2 and sec. 1; 1 Domat's Civil Law (Cushing's ed.), p. 197, sec. 260, and art. 431, p. 248; Saunders Justinian (5 ed.), p. 359.

There being evidence before the jury that Polly Ryan, her children and those claiming under her, had claimed the Polly Ryan league and labor of land since 1838, and occupied the same (involved in this suit) under the claim, for more than thirty years next before the filing of this

suit; and there being no evidence that James McKim during his lifetime, or that his heirs since his death, claimed the land, excepting the testimony of Major McKim, a man 62 years old at the time he testified, a son of James McKim, his testimony standing unsupported, the court should have submitted to the jury the question of presumption of a deed, or verbal sale, from James McKim to Polly Ryan, and allowed the jury to determine whether or not the facts justified the presumption of a deed, considering possession and claim on one side, and want of possession and nonclaim on the other. Taylor v. Watkins, 26 Texas, 695; Texas Mexican Ry. Co. v. Uribe, 85 Texas, 390; Herndon v. Vick, 89 Texas, 475; Herndon v. Burnett, 21 Texas Civ. App., 27; Dailey v. Starr, 26 Texas, 565; McDow v. Rabb, 56 Texas, 159; Wells v. Burts, 22 S. W. Rep., 420; s. c., 3 Texas Civ. App., 435; Manchaca v. Field, 62 Texas, 141; Smith v. Swan, 22 S. W. Rep., 249; s. c., 2 Texas Civ. App., 567; Yancey v. Norris, 27 Texas, 49; Sulphen v. Norris, 44 Texas, 204; Garner v. Lasker, 71 Texas, 435; Grayson v. Lofland, 21 Texas Civ. App., 507; Dunn v. Eaton, 23 S. W. Rep., 163 (Tenn.); 1 Greenleaf's Ev., sec. 46, and notes; Id., sec. 17; Fletcher v. Fuller, 120 U. S., 534, 30 Law Ed., pp. 762-3; United States v. Chaves, 159 U. S., 452, 40 Law Ed., p. 215, and note; Wharton's Law of Evidence, sec. 1338, pp. 505, 506; Lawson's Presumptive Evidence (2 ed., 1899), pp. 474-485, rule 86; 1 Jones' Evidence, sec. 72, p. 153 and note 6; secs. 73, 74, 75; Abbott's Trial evidence, (2 ed., 1900), pp. 896, 897, 898; note 5, p. 897, and note 1, p. 898.

The execution and loss of a deed may be proven by circumstances, that is, by presumptive evidence, without reference to lapse of time. Walker v. Sharp, 15 S. W. Rep., 32; Bounds v. Little, 75 Texas, 316; 4 Encyclopedia of Evidence, p. 207b; note 91, and p. 219b, and note.

The adverse claim of Polly Ryan, her children and those under her, could have had a legal commencement by verbal sale from James McKim to her, or by deed since lost, or without deed, or by the admissions in the pleading of Polly Ryan and James McKim in the suit of Hugh Jackson et al v. Polly Ryan and James McKim in the District Court of Polk County; therefore the jury should have been instructed or advised that they could presume such commencement after many years of uninterrupted enjoyment of the premises by Polly Ryan, her children and those under her, as shown by the evidence. Their possession being consistent with their claim of right, and without this presumption the possession of Polly Ryan, her children and those under her, would have been unlawful, and can only be satisfactorily explained by the presumption of a grant, or deed, or sale. The court should have instructed the jury on this issue in any event as a question of fact. Lewis v. San Antonio, 7 Texas, 306; Taylor v. Watkins, 26 Texas, 688; Paul v. Perez, 7 Texas, 344; State v. Purcell, 16 Texas, 310; 1 Greenleaf's Evidence (Lewis' Ed.), secs. 45, 46; Lawson's Presumptive Evidence (1889), pp. 482, 483; 4 Encyclopedia of Evidence, p. 219, citing Taylor v. Watkins, supra; 1 Jones' Evidence, sec. 73.

A grant, or deed, or conveyance, under the facts of this case may be presumed, though the jury should believe such grant, or deed, or conveyance, from James McKim to Polly Ryan, was in fact never made. Ballard v. Perry, 28 Texas, 366; 1 Jones' Evidence, p. 155, sec. 73;

4 Encyclopedia of Evidence, p. 221 (3); Fletcher v. Fuller, 120 U. S., 534; Dunn v. Eaton, 92 Tenn., 743, 23 S. W. Rep., 163; Casey v. Inloes, 1 Gill (Md.), 430, 39 Am. Dec., 650.

On November 4, 1852, in the suit of Hugh Jackson et al. v. Polly Ryan and James McKim in the District Court of Polk County, Polly Ryan and James McKim filed their amended answer alleging: "And now comes defendants, and by leave of court amend their answer by stating that they own, possess and claim, and have continued to own, possess and claim from the 20th of May, 1838, up to this time, under certificate to James McKim, assignee of Polly Ryan (No. 200), issued by the commissioner of Jasper County, Texas, on the 1st of March, 1838, and under survey made April 18, 1838, and under patent dated 29th October, 1845 (copies of which certificate and survey and the patent are on file in this cause), the land set forth and described in said field notes and patent, and still own, claim and possess the same." This suit was brought July 17, 1847, against Polly Ryan, the only named defendant, who answered on April 8, 1848, October 9, 1848, and October 10, 1849, pleading general issue, statute of limitations, ownership and possession of the land. April 13, 1852, plaintiffs amend, making James McKim one of the defendants. The suit was decided and judgment rendered against Polly Ryan and James McKim in May, 1853. They both appealed, gave bond; judgment rendered in the Supreme Court against both March 13, 1854. On December 11, 1846, Polly Ryan by deed conveyed to James McKim one-third of the Polly Ryan league and labor of land, and on April 17, 1850, James McKim conveyed 1535 acres of the land to G. L. Martin, reciting in his deed that it was the same tract of land purchased by him from Polly Ryan on the 11th day of December, 1846. March 14, 1863, Polly Ryan conveyed by deed to her granddaughter, Mahala Sylvester.

Polly Ryan, her children, and those under her, occupied, lived on and claimed the land involved in this suit prior to the issuance of the first patent in 1845 to the institution of this suit. The admissions contained in the pleading of Polly Ryan and James McKim above quoted, placed the title to the land in James McKim and Polly Ryan at and from the time of filing said answer, subject only to legal rights, if any, of purchasers for value from James McKim without notice of rights of Polly Ryan. It was error in the court to ignore these facts in evidence, in charging the jury. Hardy v. DeLeon, 5 Texas, 243; Doty v. Barnard, 92 Texas, 104; Wallace v. Pruitt, 1 Texas Civ. App., 231; Bradford v. Knowles, 78 Texas, 119.

On March 1, 1838, at the time the Board of Land Commissioners issued certificate No. 200 to James McKim, assignee of Polly Ryan, it shows that he appeared before the board and made proof that Polly Ryan was entitled to the land upon conditions stated. Under the Spanish law then in force, James McKim could have represented his sister, Polly Ryan, and procured the land in his own name, under the law de mandato, by which he would have acted as her friend, in whom she could rely, and not as her agent or attorney. Though the certificate issued in the name of James McKim, assignee of Polly Ryan, and the patent followed the certificate, yet, under the Spanish law, he acted for her, in his name, the relation existing merely by the consent of the

two parties, honorary, without pay to the mandate, the title remaining in Polly Ryan. Saunders' Justinian, tit. 26, pp. 371, 372; 1 White's Recopilacion, edition 1839, tit. 12, p. 182; 1 Domat's Civil Law (Cushing's ed.), tit. 15, secs. 1114, 1115, 1116, 1119, 1121, 1125, 1133, 1134, 1149, 1158; 2 Partidas (Lislet and Carleton, 1820), p. 840; Law, 24, p. 836, Law, 20.

On the trial of this case appellants proposed to prove, which they could have done, by the depositions of their witnesses, Mrs. Polly Hickman, I. O. Stanford, William Clark, Mrs. S. A. Rock, Mrs. Elizabeth McCan, S. M. Rock and D. A. Dunlap, the general reputation among those living on adjacent surveys to the Polly Ryan survey as to the ownership of the Polly Ryan surveys, showing, and proposing to show, by each of said witnesses, which appellants could have done, that each of said witnesses knew the Polly Ryan survey, and had lived on it, or on adjacent surveys to said survey, for more than thirty years, and knew the general reputation among those people ·living on adjacent surveys to the Polly Ryan survey as to the ownership of the Polly Ryan survey during that time, which was that Polly Ryan, her children and those claiming under her owned it. Appellees' counsel objected to the evidence because immaterial, irrelevant, hearsay, · tended to prove no issue in this case, and that title to the land could not be aided or shown in this way. The court sustained the objections and excluded the evidence as to the general reputation among those living on adjacent surveys as to who owned the Polly Ryan survey. Appellants' counsel excepted to the ruling of the court and saved the point by bills of exception. The action of the court was erroneous. The evidence is admissible under the facts of this case, shown under statement under this proposition. Rice v. Melott, 74 S. W. Rep., 935; rehearing refused October 8, 1903, 97 Texas, 644; Dailey v. Starr, 26 Texas, 566; for facts see page 563.

In addition to what is shown by the testimony, appellants' counsel proposed to offer answers to subdivisions 10, 11 and 12 of direct interrogatory 4 as follows: "At that time Polly Ryan claimed to own the survey in her own name." "I know this, because I heard her children say so." "I can not state the number of years Polly Ryan and her family lived on the Polly Ryan survey of land." "I don't know how long they lived on it after the termination of the suit of Jacksons, involving a portion of the survey." To the reading of the quotations in evidence appellees' counsel objected, because it showed the declarations that Polly Ryan claimed to own the· survey in her own name was what her children said and not what Polly Ryan said, and that the evidence is hearsay, immaterial, irrelevant, and not admissible to prove any issue in this case. The court sustained the objections and excluded the evidence. We submit that the declarations of the children of Polly Ryan made on the land, as was shown, as to how they held the same, as to who owned the land, and as to Polly Ryan's claiming to own the land, by the statements of her children in possession, are admissible in evidence under the facts in this case, as tending to explain the possession of the children on the land, how they claimed the same, and to show that Polly Ryan's possession of the land when she lived on it was in

her own right; this after the death of Polly Ryan and her children, who made the declaration. Jackson v. Deslonde, 1 Posey's U. C., p. 684; 1 Greenleaf's Evidence (Lewis' Ed.), sec. 109 and note 3, p. 172; 6 Encyclopedia of Evidence, p. 447 (6), and note 23, citing Baeder v. Jennings, 40 Fed., 199.

If James McKim ever made any such declaration as his son, Major McKim attributes to him, then at the time James McKim made such declarations they were self-serving, and his death added no greater force to his declarations than they would have borne were he now living. Any statements by Major McKim as to what his father, James McKim, said about the land, or his claiming it, is the opinion of the witness, hearsay as to Major McKim, and self-serving as to his father, when uttered. McDow v. Rabb, 56 Texas, 154; Mooring v. McBride, 62 Texas, 311; Hays v. Hays, 66 Texas, 609; Siebert v. Lott, 20 Texas Civ. App., 193; 1 Greenleaf's Evidence (Lewis' Ed.), sec. 109; 6 Encyclopedia of Evidence, sec. 2 of p. 446, on p. 447.

*Andrews, Ball & Streetman, Dean & Nelms* and *Dean, Humphrey & Powell,* for appellees.—The title to the land in controversy having become vested in James McKim by the issuance to him, as assignee of Polly Ryan, of the original certificate, by virtue of which the land was located, and by the issuance to him on the 29th of October, 1845, of the original patent, and by the issuance to him on the 16th day of June, 1854, of the patent conveying the very premises in controversy, and the evidence being undisputed that as late as the said 16th day of June, 1854, and thereafter, the said James McKim was exercising all the rights and indicia of ownership over said land, the court properly instructed the jury that the patent from the State of Texas to James McKim, as assignee of Polly Ryan, of date June 16, 1854, vested the legal title to the land in controversy in James McKim, and that they should find in favor of plaintiffs, except as to those portions of the land in controversy affected by the statutes of limitations, unless they should find, by a preponderance of the evidence, that James McKim, prior to his death, granted or conveyed the same to Polly Ryan. The court only used the words "granted" and "conveyed" where it was absolutely necessary to use them to state the law applicable to the facts in the different paragraphs of the charge. Herndon v. Davenport, 75 Texas, 462; Walker v. Caradine, 78 Texas, 491.

The court did not err in admitting in evidence the answer of the witness, E. A. Clark, detailing conversation between T. A. Sylvester and Mahala Sylvester, his wife, with regard to the sale of the land in controversy, to Lombardi and Haight, under whom the defendants claim, because said conversation illustrated the nature, character and strength of the claim of the parties under whom the defendants herein claim title; there was no issue of innocent purchaser in good faith, and the defendants by evidence as to general reputation of ownership and title attempted to build up a presumption of the execution of a deed, offering several witnesses to show claim of the land in controversy by Sylvester and his wife, and in rebuttal of this, as well as under the general rule, the plaintiffs had the right to offer the conversation of Mahala Sylvester in disparagement of the title under which defendants claim.

Hays v. Hays, 66 Texas, 609; First Greenleaf on Evidence, secs. 108, 109; Id., sec. 152 (152C); Id., sec. 189; also the following: "Cyc.," vol. 17, p. 724.

The statement of T. A. Sylvester, who, with his wife, made the power of attorney to J. B. Holland, under which conveyance was executed to Lombardi and Haight, in 1884, and under which the defendants claim, as testified to by W. D. Hood, subscribing witness to the quitclaim deed from Polly Ryan to Mahala Sylvester, made in the presence and hearing of Polly Ryan and of witness W. D. Hood, at the time of the execution of said conveyance, "That he wanted to get the land therein conveyed out of James McKim's hands," was admissible when offered in rebuttal by plaintiffs as an act connected with and a part of the execution of the deed under which the defendants claim, and also in rebuttal of the evidence offered by defendant as to claim and ownership under Polly Ryan, as a circumstance to show the origin and impeaching the good faith of the claim asserted by Sylvester and wife to the land in controversy, and as a part of the res gestae of the execution of the deed to Mahala Sylvester.

The court did not err in excluding the testimony of the witness, Mrs. Polly Hickman, who testified by deposition, in answer to certain subdivisions of direct interrogatory No. 4, as follows: "At that time Polly Ryan claimed to own the survey in her own name. I know this because I heard her children say so." The testimony excluded was pure hearsay, in that it shows on its face that the witness was testifying as to what the children of Polly Ryan said with regard to Polly Ryan's claim of ownership. If the statement of Polly Ryan's children while in possession, as to how they claimed, would have been admissible, the rule would not be extended so as to include the statement of said children as to how Polly Ryan claimed. Hays v. Hays, 66 Texas, 609; "Cyc.," vol. 16, top of p. 1148; Mooring v. McBride, 62 Texas, 311.

FLY, ASSOCIATE JUSTICE.—This is an action of trespass to try title instituted by Mrs. Gibbs and some twenty-nine others against William Carlisle, George W. Pennell, Tom Tipton, J. R. Cox, Lee Linton, W. E. Clark and W. D. Chessher to recover a tract of land in Trinity County, granted to James McKim assignee of Polly Ryan, containing about 2,200 acres. W. D. Chessher, Lee Linton and Tom Tipton filed disclaimers as to all the lands sued for. William Carlisle and George W. Pennell, composing the firm of William Carlisle & Co., filed an answer claiming certain portions of the land, pleading three, five and ten years limitation, disclaiming as to all the land except that described in their answer, excepting therefrom 40½ acres belonging to W. E. Clark and 288 37-100 acres belonging to John R. Cox and disclaiming as to all land not a part of the land patented to James McKim assignee of Polly Ryan on June 16, 1854. Cox answered claiming 288 37-100 acres of the land sued for, disclaiming as to the balance, and pleading three, four, five and ten years limitations. Clark filed the same character of answer claiming 40½ acres of the land. The cause was tried by jury and resulted in a verdict and judgment for Mrs. Gibbs for an undivided 738 acres of the land in controversy; for John R. Cox for 288 37-100 acres of the land; for W. E. Clark for 40½

acres; for William Carlisle & Co., for 127½ acres and Mrs. Gibbs, W. S. Gibbs and the heirs of James McKim for the balance of the land remaining after deducting the parts recovered by the different parties as hereinbefore stated. Only Carlisle and Pennell have appealed.

It is disclosed by the record that on March 1, 1838, a certificate for one league and labor of land was issued to James McKim, assignee of Polly Ryan, and on October 29, 1845, a patent was issued by the Republic of Texas to James McKim, assignee of Polly Ryan, for one league and labor of land in Polk County. On December 11, 1846, Polly Ryan conveyed to James McKim 1,535 acres of land out of the southern portion of a tract described as "part of survey made in the name of James McKim, assignee of Polly Ryan," being the land patented as hereinbefore stated. On April 17, 1850, the 1,535 acres was conveyed by James McKim to G. L. Martin, the land being described as in the deed from Polly Ryan to James McKim. On July 17, 1847, Hugh Jackson and others filed an action of trespass to try title to the league of land in Polk County against Mary Ryan, alias Polly Ryan, to which she answered on April 8, 1848, by pleas of not guilty and limitation of five years. This answer was amended several times by Polly Ryan. In 1851 the plaintiffs amended their petition, but did not add any other parties defendant, but in October, 1851, James McKim asked to be made a party and in April, 1852, an amended petition was filed in which he was made a defendant with Polly Ryan, in compliance with an order of the court. To that petition the defendants answered: "That they own, possess and claim, and have continued to own, possess and claim from the 20th of May, 1838, up to this time, under certificate to James McKim, assignee of Polly Ryan (No. 200), issued by the commissioner of Jasper County, Texas, on the 1st of March, 1838, and under survey made April 18, 1838, and under patent dated 29th of October, 1845, the land set forth and described in said field notes and patent and still own, claim and possess the same." A survey was ordered by the District Court and report made that there was a conflict of plaintiffs' land with the James McKim or Polly Ryan survey to the amount of 2,444 acres, only 1,994 acres of that survey being free from conflict. In May, 1853, the plaintiffs recovered the land that was in conflict with theirs and on appeal the judgment was affirmed by the Supreme Court. (Ryan v. Jackson, 11 Texas, 391. On April 16, 1852, the deed given by James McKim to G. L. Martin, to 1535 acres of land, was cancelled and revoked at the instance of McKim. Three days before that judgment McKim had been made a party to suit by Hugh Jackson and others.

On October 16, 1851, McKim employed Yoakum & McCreary to defend the suit, superseding attorneys theretofore defending the suit, and in the agreement it was stated: "James McKim has employed Yoakum & McCreary to defend his suit of Jackson et al. v. Polly Ryan for the league and labor of land lying in Trinity County at Ryan's Ferry and patented to McKim as assignee of Polly Ryan. Said suit is pending in Polk District Court, and if same is decided in favor of defendant McKim he is to convey to said Yoakum & McCreary for their services one-third of said land, provided the title given to G. L. Martin for one-third of said league is set aside and for which a suit

is this day brought in said court, and if they succeed in getting the suit against Jackson et al., and do not succeed in gaining the suit against Martin, then said Yoakum & McCreary are to have for their services one-third of the balance, deducting the amount deeded to Martin on the 17th April, 1850. But if said Yoakum & McCreary do not succeed in gaining the case of Jackson et al., then they were to have nothing." On May 13, 1854, James McKim conveyed to Yoakum & McCreary one-third of the land left after the recovery by Jackson et al., out of the survey patented to McKim, assignee of Polly Ryan.

On June 13, 1854, the patent of October 29, 1845, issued to James McKim, assignee of Polly Ryan, was cancelled by the Land Commissioner "in accordance with decision of the Supreme Court, on account of conflict;" and on June 16, 1854, a patent was issued by the State to James McKim, assignee of Polly Ryan, for 12,403,920 square varas of land being the land in controversy in this suit, and being that part of the land granted by the original patent, that was not recovered by the Jacksons in the suit of Jackson v. McKim. It was shown that Yoakum & McCreary and their representatives rendered 738 acres of the land for taxation for the years 1855 to 1873 inclusive; for 1874, 554 acres of the tract was rendered by W. T. Robinson, and of it by him for the years 1875 and 1876. For the years 1877 and 1885 the land was not rendered for taxation by anyone. Appellants claim the land through a deed made by Polly Ryan to her granddaughter, Mahala Sylvester, on March 14, 1863, to all her right, title and interest in the land granted to James McKim, assignee of Polly Ryan. In 1884 Mahala Sylvester joined by her husband executed a power of attorney to J. B. Holland to sell the land; and from him, by mesne conveyances, the land came down to appellants, T. A. Sylvester rendered 200 acres of the land for taxation in 1863 and 800 acres in 1873, but from that time neither the Sylvesters nor anyone claiming through them rendered any of the land for taxation until 1886, when 158 acres was rendered by I. C. Stanford, 269 acres by T. D. Stanford and 1,786 acres by C. Lombardi. Polly Ryan was the sister of James McKim. James McKim died in 1862. Limitation was shown as to the 40½ acres awarded to W. E. Clark, as to the 288 37-100 acres awarded to John R. Cox and as to the 127½ awarded to William Carlisle and Company, and no dissatisfaction is expressed with those portions of the judgment. Neither is any error urged as to the court instructing a verdict in favor of Mrs. Gibbs for an undivided interest in the land of 738 acres.

The record title to the land was in James McKim from whom appellees claim; and in order to recover, as the case was presented by the parties, it devolved upon appellants to show by the circumstances surrounding the case that James McKim had made a conveyance of the title to the land to Polly Ryan, and there being no other point in the case, as it was tried, after the matter of limitations had been settled as to those parts of the land awarded to the defendants and Mrs. Gibbs, the court made that question the pivotal one for the guidance of the jury. There being no written evidence of a conveyance of the land, or any part thereof to Polly Ryan by James McKim, if the facts and circumstances did not justify the inference that a conveyance had been

made, then appellees had made out their case and should have recovered that part of the land to which title had not been shown by limitation.

Whatever may have been the rule at one time in this State, or in other jurisdictions, it is firmly settled, by the later decisions in Texas, that the presumption of a grant arising from possession and other circumstances, is one of fact and not of law. (Dailey v. Starr, 26 Texas, 562; Taylor v. Watkins, 26 Texas, 688; Harrison v. McMurray, 71 Texas, 122; Walker v. Caradine, 78 Texas, 489; Texas Mexican Railway v. Uribe, 85 Texas, 386; Herndon v. Vick, 89 Texas, 469; Herndon v. Burnett, 21 Texas Civ. App., 25; Dorsey v. Sternenberg (Texas Civ. App.), 15 Texas Ct. Rep., 660.)

In the cited case of Taylor v. Watkins, Judge Bell, after reviewing authorities on the subject said: "I draw the conclusion, from what has been said, that the question whether a grant will be presumed or not is a question for the jury; in other words, that the court ought always leave it to the jury to presume a grant or not, according to the evidence and circumstances of the case; that the presumption of a grant does arise, from long and uninterrupted possession, where the possession is consistent with the presumption, and that the jury may properly be told thus much as matter of law; but that the presumption may be repelled by proof."

In the case of Walker v. Caradine, before cited, it was said: "The presumption of a grant which arises from long continued possession and use of real property is a presumption of fact, and can only have a controlling affect upon the title when all the circumstances in proof are consistent with the existence of a conveyance."

In the latter decision of the Supreme Court on the subject, in the case of Herndon v. Vick, above cited, it was said by Chief Justice Gaines: "But it is insisted on behalf of defendant in error that should this court hold that the trial court erred in excluding the evidence of the transfer from Dickinson to Cole, the judgment should nevertheless be affirmed. The ground of this contention is, that the proof of the long and continued possession, use, and an enjoyment of the land in controversy, under a claim of title by defendant in error and those under whom he claims, together with the evidence that no claim had ever been asserted on behalf of the plaintiff in error until the bringing of this suit, is so conclusive in its nature and tendency as to impel the court to presume a sale or conveyance from Cole back to the original grantee, should it be found that Cole ever possessed the title. It has doubtless been held in other jurisdictions that the inference arising from long possession and enjoyment of real estate, together with corroborating circumstances, may be so cogent as to make it the duty of the court to instruct the jury to presume a grant. Such is not the rule in this State. With us the presumption is one of fact, and it is for the jury to determine the effect of the evidence in support of that presumption."

The effect of the authorities cited, as well as others, is to establish the rule that a conveyance of real property may be established by circumstances, such as long possession and enjoyment of it, and that such circumstances must be submitted to the jury to be determined by them whether or not they will support the presumption or inference of a

grant or conveyance. In other words that such circumstances may create a presumption of fact, but not a presumption of law.

The trial court, in the absence of direct proof of the existence of a grant or conveyance on the part of James McKim to Polly Ryan, after directing a verdict for Mrs. Gibbs for the land sold by McKim to Yoakum & McCreary and for defendants for other portions of the land, whose title had been established by limitation, instructed the jury as follows:

"As to the remainder or balance of said land in controversy after deducting the above mentioned, you are instructed that you will find for the plaintiffs herein, unless you shall find by a preponderance of the evidence in this case that James McKim, prior to his death, granted or conveyed the same to Polly Ryan; and this is a question for you to determine from the evidence before you. In determining this question you will take into consideration all the evidence, documentary and oral, before you, and will from such evidence determine whether or not James McKim, during his lifetime, granted or conveyed said lands to said Polly Ryan. And if you shall believe by a preponderance of the evidence that said James McKim, prior to his death, granted or conveyed the remainder of said land to Polly Ryan, then you are instructed that, if you so believe, that the legal effect of the deeds and conveyances, in evidence before you, under which defendants, Carlisle and Company, claim, would be to put the legal title in said Carlisle and Company; but unless you so find that James McKim, prior to his death, granted or conveyed to Polly Ryan the land in controversy, such deeds and conveyances would not have such effect.

"The issue for you to determine is whether the said James McKim, prior to his death, granted or conveyed said land to said Polly Ryan. If you believe from a preponderance of the evidence, by which is meant the greater weight and degree of credible evidence, that James McKim, prior to his death, granted or conveyed his interest in the land in controversy to Polly Ryan, you will find for the defendants, Wm. Carlisle and Company, the balance of said land left after deducting the portions hereinbefore named, and the form of your verdict would be: We, the jury, find for the plaintiffs, S. E. Gibbs, for an undivided 738 acres of the land in controversy; and for the defendant, Jno. R. Cox, for the 288 37-100 acres described in his deed; and for the defendant, W. E. Clark, for the 40½ acres; and for the defendant, Wm. Carlisle and Company, for the 127½ acres of the land described in the Clark deed; and for the defendant, Wm. Carlisle and Company, for the balance of the land in controversy.

"But if you do not find by a preponderance of the evidence that James McKim, before his death, granted or conveyed such interest to Polly Ryan, then you will find for plaintiffs for the balance of the land in controversy, and the form of your verdict would be: We, the jury, find for the plaintiffs, S. E. Gibbs, for an undivided 738 acres of the land in controversy; and for the defendant, Jno. R. Cox, for the 288 37-100 acres described in his deed; and for the defendant, W. E. Clark, for the 40½ acres; and for the defendant, Wm. Carlisle and Company, for the 127½ acres of the land described in the Clark deed; and for

the plaintiffs, S. E. Gibbs and others, for the balance of the land in controversy."

It will be seen that the fact of a grant or conveyance of the land by McKim to Polly Ryan is made the sole issue to be determined by the jury, and the only complaints urged against the charge by appellants are, that it confined the jury to the consideration of a written conveyance of the land, and did not permit consideration of a parol sale of the land prior to 1840, or a parol transfer of the certificate.

The land certificate was issued to James McKim, assignee of Polly Ryan, and might have been transferred by him to her by parol at any period before the land was surveyed and located and would have been a valid transfer. (Jones v. Reus (Texas Civ. App.), 24 S. W. Rep., 674.) In this connection it is also to be remembered that the civil law was in effect in Texas prior to 1840, and that under that law verbal sales of land were recognized. (Monroe v. Searcy 20 Texas, 348; Downs v. Porter, 54 Texas, 59.) If the charge was such as to preclude the jury from considerating a verbal sale of the certificate until the time of its location, or a verbal sale of the land prior to 1840, if the location occurred before that time, it was erroneous, as claimed by appellants. While the charge does not in terms say that the sale must have been evidenced by an instrument in writing, the plain inference from the language employed is that it should have been in writing. The words used are: "granted and conveyed" and we think that anyone unacquainted with the state of the law as to land certificates, or as to land prior to 1838, and knowing that land sales at this time must be evidenced by a memorandum in writing, would naturally suppose that the words were used in their usual sense. We think, therefore, that the charge was calculated to mislead the jury, and if it could be said that the charge was correct so far as it went, still, the court erred because appellants requested the following charge which was refused:

"You are instructed that prior to and before the 18th day of January, 1840, lands in Texas, or right to land, could be sold and conveyed by parol sale with the same effect as in writing." That instruction would have explained the general charge and should have been given. (Texas Tram. & L. Co. v. Gwin, 52 S. W. Rep., 111.)

It is true that it is contended that there are no circumstances tending to show any kind of conveyance of the land or certificate by McKim to Polly Ryan, but the fact that McKim in about a year after the patent was granted to him accepted a deed to 1,535 acres of the land, is not explained and is hard to reconcile with his ownership of the whole tract. If he owed the whole of the land why should he have accepted a deed to a third of it from Polly Ryan? That he did accept it is established by his sale of the same land to G. L. Martin, and this deed describing it as having been "purchased by said McKim from Polly Ryan on the 11th day of December, 1846." While the jury might have rejected the idea of a sale of the land by deed in writing after the patent was granted or after the location of the certificate, they might have concluded that there had been a verbal sale of the certificate, or a verbal sale of the land prior to 1840, or might have concluded that McKim had procured the location and patent, and was holding the land in trust for Polly Ryan and that the deed to the 1535 acres was given

to pay him for his services. Another circumstance bearing on the case was that when the neighbors of McKim and Polly Ryan sued for the land, in spite of the fact that the patent was in the name of McKim, they sued Polly Ryan, and McKim got into the suit only at his own instance and request. Again, he answered with Polly Ryan that they jointly owned the land, which was true even though he had no interest in it except the 1,535 acres she had conveyed to him. Afterwards Polly Ryan asserted her claim to the land by giving it to her granddaughter Mahala Sylvester. These facts and circumstances have been arrayed merely to show that the case presented facts that entitled it to be placed before the jury through a proper charge.

The following charge was requested by appellants: "You are charged that if Polly Ryan, her heirs, and those claiming under and through her, have openly, publicly and notoriously occupied, held and claimed the Polly Ryan survey involved in this suit, situated in Polk and Trinity Counties, Texas, since the patent issued to James McKim, assignee of Polly Ryan, October 29, 1845, and that James McKim or his heirs, or those claiming under James McKim, have not claimed or asserted title to said land for thirty years after the issuance of the patent in 1845, then you are authorized to presume, from the evidence in this case, the assertion of claim by Polly Ryan, and nonassertion of claim by James McKim and his heirs, that James McKim did by parol sale or by deed, prior to January, 1840, convey to Polly Ryan said land. This, excepting out of the same the land sold by James McKim to Yoakum & McCreary, and the balance of the survey would be affected by the presumption of a deed as herein, provided the facts of claim of ownership of Polly, and those under her, of the land has existed for more than thirty years after the issuance of said patent." The language hereinbefore quoted from Taylor v. Watkins, 26 Texas, 688, would seem to justify the charge as to the jury being authorized to presume a grant from long and uninterrupted possession, and, if the facts justified it, it should have been given. A similar charge was commended in Harrison v. McMurray, 71 Texas, 122. In the case of Walker v. Caradine, 78 Texas, 489, a charge very similar to the one asked in this case was condemned on the ground that it was not supported by the evidence, and in Herndon v. Vick, 89 Texas, 469, it was held that long possession and enjoyment of real estate, together with corroborating circumstances, did not justify a court to instruct a jury that a grant was presumed as a matter of law, but that it was a question of fact for the jury. We do not think, however, that the evidence as to possession was clear enough to justify the charge, although if it had been stated that the evidence of possession, if any, taken with the other circumstances in proof authorized the jury to presume a grant, the charge would have been a correct one, under the authorities cited.

The thirty-second, thirty-third and thirty-fifth assignments of error are not followed by such a statement as is contemplated by the rules. It is not a compliance with the rules to make no statement except a reference to different parts of the record. In view of another trial this court has read the charges refused by the trial court, and holds that they were properly refused. The answer of James McKim in the case instituted by the Jacksons against Polly Ryan presents none of the elements

of estoppel as against him or his heirs, nor was the answer equivalent to a conveyance from McKim to Polly Ryan. It was merely a circumstance, that might be considered with others in determining whether Polly Ryan owned the land or a part thereof. The second proposition under the assignments has no connection whatever with them.

The court properly refused to instruct the jury that, under the contract between James McKim and Yoakum & McCreary, the latter were not entitled to receive any of the land recovered, because they did not recover all of it. If that was a proper construction of the contract, the court properly refused to allow such an issue to be injected into the trial. A deed was made by James McKim to the attorneys, and an issue as to the consideration for that deed had no place in the case.

Appellees were allowed over the objections of appellants, to introduce in evidence the following deposition of E. A. Clark: "Yes I heard conversation between said T. A. Sylvester and his wife, Mahala, with reference to said sale (to Lombardi and Haight), prior to the consummation thereof. Said T. A. Sylvester addressing his wife, said: 'Mahala I am going to sell that Polly Ryan land.' She then said: 'What Polly Ryan land?' He replied saying: 'God damn it, that land over the river yonder; they call it the McKim gore.' She then said: 'Mr. Sylvester, you had better let that alone; you might get yourself into trouble.' " The issue in this case was, whether the land in controversy, although the legal title was in McKim, was not really the property of Polly Ryan, and it was sought to establish that issue by circumstances. In such cases the law is very liberal in permitting any and all circumstances, however slight, tending to prove or disprove the issue, but they must have such tendency. The conversation between Sylvester and his wife did not throw any light whatever on that issue, but merely tended to show that Mrs. Sylvester did not know what was meant by the Polly Ryan land and thought her husband might have trouble about it. It shed no light whatever on the issue as to whether the land belonged to Polly Ryan or James McKim, and was improperly admitted in evidence.

W. D. Hood was allowed to testify that T. A. Sylvester stated in the presence of Polly Ryan and of witness, at the time she made the deed to Mahala Sylvester, that he (Sylvester) "wanted to get the land therein conveyed out of James McKim's hands." We do not see how the statement had any bearing upon the issues of the case and yet we do not perceive how it could have unfavorably affected the cause of appellants. It was perfectly consistent with Polly Ryan's claim to the land that she and those claiming from her should want to divest the title to land out of McKim or his heirs.

The facts in this case have a tendency to raise the issue as to the land in controversy having been located and patented in the name of James McKim, but that he was holding the same in trust for Polly Ryan. That inference would explain the circumstances of his accepting a deed to 1,535 acres out of the land to which he held a patent. He needed no deed to that 1,535 acres, unless Polly Ryan had an equitable title to it, and it might suggest that he was receiving that number of acres for obtaining and locating the certificate and securing a patent. Of course the circumstance of McKim accepting such deed may be ex-

plained and we are expressing no opinion on whether it was explained which is a point peculiarly for a jury, but it is a circumstance that gave appellants the right to prove every circumstance that would tend to strengthen its force and effect. If Polly Ryan lived on the land and laid claim to it and it was generally known among those living in the vicinity of the land, that she claimed the land, it was a circumstance which, taken with the circumstance aforementioned, might show that while the legal title was in McKim he knew or ought to have known that Polly Ryan was asserting title to the land. Also on the presumption of a grant, or rather proof of a deed by circumstances, we think, general notoriety as to the claims of Polly Ryan to the land should have been admitted. This principle was established in the case of Dailey v. Starr, 26 Texas, 562, where it was held: "Nor do we think there was error in permitting the plaintiffs below to make proof of the notoriety of their claim of title. Such evidence tended to show acquiescence in their claim by Aranjo and his heirs, and to strengthen the presumption that the title had passed from them." That authority has never been questioned, but has met with approval in a number of cases. That rule would not justify evidence of general reputation as to the real ownership of the land, but the evidence must be confined to the general notoriety of the claim of Polly Ryan, to the land, that being allowable as tending to show that McKim knew that she was claiming it. (Rive v. Melott (Texas Civ. App.), 74 S. W. Rep., 955.)

The testimony of Polly Hickman as to the children of Polly Ryan telling her that their mother claimed the land was hearsay, and was properly excluded.

One of the circumstances relied upon by appellants to prove that the land in controversy was really the property of Polly Ryan, although the legal title was in McKim, was that he set up no claim to any of the land except that sold to him by Polly Ryan, and it would be very unjust and unreasonable to hold that evidence in rebuttal of that proof was not admissible. There is no merit in the contention that the court erred in permitting Major McKim to testify that his father "claimed the land as his own."

The judgment as to the 738 acres of land awarded to Mrs. Gibbs, and the land awarded to the defendants Cox, Clark and appellants, will be affirmed, but for the errors herein indicated the balance of the judgment will be reversed and the cause remanded.

*Reversed and remanded.*