HOUSTON OIL CO. OF TEXAS v. SUDDUTH et al. (No. 6679.)

(Court of Civil Appeals of Texas. Galveston. Nov. 21, 1914. Rehearing Denied Dec. 17, 1914.)

1. LOST INSTRUMENTS (§ 23*)—ACTIONS— LOST DEED—EVIDENCE.

Where, in trespass to try title, plaintiffs claimed under an alleged deed from the patentee to F., which they were compelled to prove by circumstances, evidence of a chain of title to 800 acres of the same survey but not a part of the land in controversy, beginning with a deed from the same F., and evidence of another chain of title to other portions of the survey which failed to connect with the sovereignty of the soil, the deeds having been of record for many years and the parties having long since died, were admissible as circumstances to prove the execution of the alleged deed from the patentee to F.

[Ed. Note.—For other cases, see Lost Instruments, Cent. Dig. §§ 51–57; Dec. Dig. § 23.*]

2. LOST INSTRUMENTS (§ 23*)—ACTIONS—LOST DEED—EVIDENCE.

Where an alleged administrator's deed in plaintiff's chain of title was claimed to have been lost, a certificate by the administrator, reciting that in the year 1843 or 1844 he, as administrator of the decedent's estate, executed to S. a conveyance of the land in controversy, was not a mere ex parte statement, but was admissible as a circumstance to show that the patentee had previously conveyed the land to the intestate.

[Ed. Note.—For other cases, see Lost Instruments, Cent. Dig. §§ 51–57; Dec. Dig. § 23.*]

3. EXECUTORS AND ADMINISTRATORS (§ 275*)—REAL PROPERTY — SALE — EXCHANGE FOR CLAIMS.

Act Feb. 3, 1844 (Gammel's Laws, p. 990; Hartley's Dig. art. 1075), provided that an administrator with the consent of the court and creditors, or the court without the creditors' consent, may apportion the assets to the creditors in settlement of their claims. Held that, where an administrator executed a certificate dated August 21, 1850, declaring that "some time in 1843 or 1844 he conveyed certain land in controversy alleged to belong to the estate, to S. and his heirs, in consideration of all the claims of S. against the intestate's estate," the deed being lost, it would be presumed in support of the transfer that the conveyance postdated the statute, and was therefore based on legal authority; it appearing that the probate record had been destroyed by fire.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1076–1091, 1093, 1094; Dec. Dig. § 275.*]

4. TENANCY IN COMMON (§ 55*)—POSSESSION AS AGAINST TRESPASSER—DEEDS—INSUFFICIENT CERTIFICATE.

Where defendant, as tenant in common, claimed under a deed sufficient in form, but defective only with respect to the certificate of acknowledgment, and the grantors and their heirs for more than 50 years recognized the deed as valid, and did not join in a suit by another cotenant to recover the land, or otherwise repudiate the conveyance, defendant was not a trespasser, within the rule that a tenant in common may recover the whole tract against a trespasser.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 140–156; Dec. Dig. § 55.*]

Appeal from District Court, Newton County; A. E. Davis, Judge.

Trespass to try title by Katie V. Sudduth and others against the Houston Oil Company of Texas. Judgment for plaintiffs, and defendant appeals. Affirmed in part, and reversed and rendered in part.

Hightower, Orgain & Butler, of Beaumont, H. O. Head, of Sherman, and Parker & Kennerly, of Houston, for appellant. John B. Warren, of Houston, for appellees.

McMEANS, J. This is an action of trespass to try title, brought by the plaintiffs, Katie V. Sudduth and others, against the Houston Oil Company of Texas, to recover an undivided two-fifths interest in 250 acres of land, part of the Lewis Donaho one-half league and labor, in Newton county, and for the possession of the entire 250-acre tract. The case was tried before the court without a jury, and resulted in a judgment for the plaintiffs for the title to the two-fifths interest sued for, and declaring defendant a trespasser, and awarding plaintiffs a writ of possession for the entire 250 acres, and decreeing that "all right, title, or interest of defendant to the whole of said land be divested out of defendant and vested in plaintiffs." From this judgment the defendant has appealed.

The appellant and appellees claim title to the land in controversy through a common source, to wit, H. W. Sudduth; the appellees claiming two-fifths interest. The appellant claimed three-fifths interest by virtue of a quitclaim deed from three of the five heirs of H. W. Sudduth and his wife, Sarah Sudduth; the said three heirs being married women, who were joined by their husbands in the execution of the deed. As the title claimed by the respective parties was from the common source, it would not be necessary to go behind the common source, except for the fact that the appellant also claims under a deed executed by the heirs of Lewis Donaho to it in 1893. The common chain of title of both parties is as follows: (1) Patent from the state of Texas to Lewis Donaho. (2) Deed from Lewis Donaho to William McFarland. This deed was proved by circumstances. (3) Deed from Thos. S. McFarland, administrator of the estate of William McFarland, to Seth Swift. (4) Deed from Seth Swift to H. W. Sudduth, the common source. This deed was also proved by circumstances.

The appellees proved that H. W. Sudduth died in 1853, and that his wife, Sarah Sudduth, died in 1855, and that they were heirs of said Sudduths through John G. Sudduth, a son, and through Elizabeth Saulberry, a daughter.

The appellant claims an undivided three-fifths interest in the land in controversy: (1) Under a quitclaim deed of three married daughters of H. W. Sudduth, viz., Nancy West, Emily Conn, and Mary Ann Lewis, joined by their respective husbands, to Jesse Dickerson. (2) Deed from Jesse Dickerson to D. R. Wingate. (3) Deeds from D. R. Wingate to Charles G. Saunders. (4) Deed from Charles G. Saunders to appellant, Houston Oil Company. Appellant also introduced the chain of title emanating from the heirs of Lewis Donaho, as follows: (1) Powers of attorney from the heirs of Lewis Donaho to Seale & Powell, authorizing them to make sale of the Lewis Donaho survey or any portion thereof. (2) Deed from the heirs of Lewis Donaho, through Seale & Powell, their attorneys in fact, to the appellant, Houston Oil Company, conveying the entire tract of land in controversy.

From the foregoing it will be seen that the appellees claimed title to an undivided two-fifths interest, and the appellant an undivided interest of three-fifths, by a chain of title

emanating from Lewis Donaho, the original grantee, and passing into H. W. Sudduth. It was proved that II. W. Sudduth and his wife, Sarah, died intestate, and that the appellees were their heirs, as were also the grantors in the deed to Jesse Dickerson, appellant's remote vendor, and that appellant also claimed under a chain of title originating with a deed from the heirs of Lewis Donaho to D. R. Wingate. But for the defective certificate of acknowledgment to the deed of Nancy West, Emily Conn, and Mary Ann Lewis, three of the five heirs of H. W. Sudduth and wife, Sarah Sudduth, and to which we shall hereinafter refer, we apprehend that no serious question would be made upon this appeal as to the title of appellant to a three-fifths interest to the land in suit.

Appellant by its first assignment of error complains that the court erred in rendering judgment for the plaintiffs for any of the land in controversy, for the reason that the evidence adduced by plaintiffs in the trial was insufficient to establish the execution of deeds from Lewis Donaho, the original grantee, to William McFarland, McFarland to Seth Swift, and Swift to H. W. Sudduth, plaintiffs' ancestor, the execution of all which was proved by circumstances. It asserts in its proposition that:

"The most perfect proof of long-continued claim, consistent with the existence of a supposedly lost deed from Lewis Donaho down, does not authorize an inference of the existence of such deed, in the absence of facts tending to show acquiescence in such claim by Lewis Donaho or his heirs."

Appellant seems to concede that there was such circumstantial evidence introduced by plaintiffs of claim under the original grantee by those in defendant's chain of title, claiming under plaintiffs' ancestor and adversely to plaintiffs, as would have warranted an inference that the deeds constituting links in their chain of title existed, provided there had been proof of acquiescence on the part of defendant and its grantors since they acquired the Donaho title in 1893, and of the Donaho heirs prior to that time, but contends that plaintiffs failed to make the requisite proof of acquiescence in the claim relied upon to warrant an inference of the execution of such deeds. We have carefully examined the evidence in record bearing on the issue of acquiescence, and are of the opinion that the testimony was amply sufficient to raise the issue. To set out the facts in detail would extend this opinion to an unreasonable length, and we therefore content ourselves with the statement that it is our finding that the evidence was sufficient in that regard.

[1] During the trial the appellees introduced in evidence, over appellant's objection, a chain of title to 800 acres of the Lewis Donaho survey, of which the land in controversy was not a part, beginning with a deed from William McFarland to Lewis J. Miles, dated January 26, 1840, followed by a deed from Miles to Lydia G. Swift, dated June 1, 1840, and continuing down through the probate proceedings and partition of the estate of Lydia G. Swift and Elizabeth Swift, and deeds made by parties claiming under the Swifts. They also introduced, over appellant's objection, certain deeds in a chain of title to other portions of the Lewis Donaho survey, which failed to connect with the sovereignty of the soil, including deeds from Alfred West to Jordan Reese, from J. T. Mangum to Albert Bean, and from J. E. B. Bean and wife to J. T. Bean. All these deeds were introduced as circumstances, in connection with other circumstances, to prove the execution of a deed from Lewis Donaho to William McFarland. The deeds had been on record in Newton county for years, and the parties to all of them had long since died. In addition to the deeds above mentioned the appellees introduced in evidence, also as a circumstance to prove the execution of said deed, an instrument executed by Thomas S. McFarland, administrator of the estate of William McFarland, his father, to Seth Swift, dated August 21, 1850, which is as follows:

"The State of Texas, Newton County.

"Know all men by these presents, that whereas, some time in the year of 1843 or during the year eighteen hundred and forty-four, as administrator of the estate of William McFarland, dec'd, I made to Seth Swift a deed of conveyance; and whereas, the said Seth Swift has certified the same was burned in the destruction of his house, and made affidavit of the fact before J. S. Cochran, a justice of the peace of the county aforesaid: Therefore I make this certificate by way of substitution for the loss of said deed, which embraced and conveyed the following property, viz.: One certain tract or parcel of land situate on Cow creek in the county aforesaid, the headright of Lewis Donaho, being all of said Donaho's headright situate on Cow creek, after deducting that portion of said tract which was previously sold, which leaves for said Swift fourteen hundred and fourteen acres. For further particulars refer to the original field notes, and deed from said Donaho to said McFarland. Also, one certificate for two-thirds of a league and one labor of land, the headright of Enis Hardin, granted at Jasper, the 7th day of Dec'r, 1838, No. 502. Also a certificate for (369) three hundred and sixty-nine acres of land, the headright of Corbet Stevens, granted at San Augustine July 7, 1838, No. 957.

"The foregoing property, as specified, was sold and transferred to said Seth Swift and his heirs and assigns forever, for and in consideration of all and singular the claims of said Swift against the said estate of Wm. McFarland, dec'd. To acknowledge and certify which I hereto subscribe my signature and scrawl instead of a seal on this twenty-first of August, A. D. eighteen hundred and fifty."

We think that the deeds were admissible in evidence as circumstances, along with other circumstances, upon the issue of the execution of the deed from Lewis Donaho to William McFarland. Carlisle v. Gibbs, 44 Tex. Civ. App. 189, 98 S. W. 196; J. M. Guffey Petroleum Co. v. Hooks, 47 Tex. Civ. App. 560, 106 S. W. 695; Brewer v. Cochran, 45

Tex. Civ. App. 179, 99 S. W. 1035. Appellant's second and third assignments, which raise the point, are overruled.

[2] By its fourth assignment appellant complains of the action of the court in admitting in evidence, over its objection, the instrument executed by Thomas S. McFarland, administrator of the estate of William McFarland, which has hereinbefore substantially been set out in the discussion of appellant's second and third assignments. The first objection urged is that the instrument, being merely an ex parte statement, was not brought within any exception to the hearsay rule, there being no showing of actual age of as much as 30 years, and that the same was not admissible as a recorded instrument, because not such as is authorized by law to be recorded. The instrument was only one of many circumstances introduced in evidence to prove the truth of the facts therein recited —that is to say, that Lewis Donaho had previously deeded the land to William McFarland—and as such circumstance, in connection with the other circumstances proved, it was admissible in evidence.

A second objection is that plaintiffs' evidence indicated the existence of the original of such instrument, and that, therefore, no sufficient predicate for the admission of secondary evidence was laid. On this point we have examined the evidence carefully, and find that a thorough and complete search for the original was made at every place where it reasonably could be expected to be found, and that inquiry was made of every person that reasonably could be expected to know where it was, and that such search and inquiry, although prosecuted with diligence, failed to discover the original.

[3] A third objection is that the instrument shows an invalid administrator's sale, since it shows that the administrator transferred the property to Swift "in consideration of the claims of Swift against the estate," and that such transfer was not authorized under the law of its purported date, and no presumption could be indulged that it was confirmed. This objection cannot be sustained. The instrument, which is dated August 21, 1850, recites that "some time in the year 1843 or during eighteen hundred and forty-four" the administrator made the deed of conveyance to Seth Swift, and further recites that:

"The foregoing property, as specified, was sold and transferred to said Seth Swift and his heirs and assigns forever, for and in consideration of all and singular the claims of said Swift against the estate of Wm. McFarland, dec'd."

The act of February 3, 1844 (Gammel's Laws of Texas, page 990; Hartley's Dig. page 345), provides in section 1 thereof:

"That in all cases in which there may be debts due the estate of any deceased person, or property sold by the executor or administrator thereof, prior to the first day of May, eighteen hundred and forty-two, or upon contracts made by the deceased, in his lifetime, and prior to said first day of May, 1842, it shall be the duty of the chief justice of the probate court, upon a representation of the facts, by petition, by the administrator or executor, to cause the creditors of the estate to be notified to appear at some specified term of the court, and have their claim settled. * * *"

Section 2 provides:

"That when the time for said settlement shall arrive, the court, after ascertaining the amount due to each, and what proportion of their respective claims the estate will be able to pay, shall cause the executor, or administrator (as the case may be), to transfer to each of the several creditors so much of the credits thereof, at their appraised value, as may appear to be their respective proportion: Provided, that the same shall be taken and held to be in full and perfect satisfaction of their claims, to the amount received."

The third section provides:

"That should any of the creditors be unwilling to receive said credits in satisfaction of their claims, the court shall set apart such proportion thereof as they may be entitled to, and the settlement shall take place as to the other creditors. * * *"

If we assume that the conveyance referred to in the instrument under discussion was executed in 1843, then it may be that no title passed to Seth Swift thereby, because of a want of authority in the probate court and the administrator to order and make an exchange of property of the estate for debts owing by it; but if it be assumed that the conveyance was made in 1844, and after the adoption of the act, above copied, on February 3, 1844, then the conveyance for such purpose was authorized by law and passed the title of the estate. The instrument in question says that the deed was made some time in the year 1843 or during the year 1844. We think it reasonable, after so great a lapse of time, and after the probate and other records had, as the record shows, been destroyed by fire, to indulge the presumption that the deed in question was made in 1844, and after the adoption of the act above copied, and that it was made under the authority of the act, and that all the necessary prerequisites thereof had been complied with in order to pass the title to the land out of the estate of William McFarland and vest it in Seth Swift.

The fifth, seventh, eighth, and ninth assignments assail in various ways the action of the court in rendering judgment in favor of appellees for the three-fifths undivided interest claimed by appellant, and ousting appellant from the possession thereof. It appears that when H. D. Sudduth died administration was had upon his estate, and that in course of time a partition thereof among his heirs was ordered. After this order was made Wm. McF. Lewis, administrator, filed his application requesting that the land in controversy be left out of said partition; and the administrator, joined by Nancy West, Elizabeth Saulsberry, Mary Ann Lewis, Emily Conn, and Solomon Wright, guardian of the minors, Henry and Sarah Ann Sudduth, said parties constituting all the heirs of H. W. Sudduth, deceased,

also filed a petition to leave said land out of the partition, reciting that said H. W. Sudduth, during his lifetime, had sold the land in controversy to Jesse Dickerson, and that said heirs were desirous of relinquishing to said Dickerson the title to said land, and that they had received payment therefor. Upon this request the land was left out of the partition of said Sudduth's estate. Afterwards, on March 18, 1859, three of the five heirs of H. W. Sudduth, viz., Nancy West, joined by her husband, Jefferson West, Emily Conn, joined by her husband, Joseph Conn, and Mary Ann Lewis, joined by her husband, Wm. McF. Lewis, executed to Jesse Dickerson, appellant's predecessor in title, a quitclaim deed to the land. These heirs owned three-fifths undivided interest in the land. The certificate to this deed was held by the court to be invalid, and the deed for that reason ineffectual to pass the title of the grantors. The certificate is as follows:

"The State of Texas, County of Newton.

"Before me, T. S. McFarland, chief justice of county aforesaid, personally appeared in my presence all of the signers of the within quitclaim deed, viz., Jefferson West and wife, Nancy West, Joseph Conn and wife, Emily Conn, and Wm. McF. Lewis and wife, Mary Ann Lewis, all of whom are well known to me, and they signed in my presence and then acknowledged the same to be their voluntary acts. All the said women aforesaid were examined separately and apart from their husbands, and they said they were acquainted with the circumstances and transaction and did not wish to retract what was done. To certify to the foregoing, I hereto place my signature and affix the seal of the county court this 18th day of March, 1859.          T. S. McFarland,
          "Chief Justice Newton County."

Appellees are shown by the evidence to be owners of the title to the other two-fifths. After the execution of the above-mentioned deed in 1859, the grantors and their heirs never asserted any title to the land adversely to the title or claim of Jesse Dickerson, nor were they parties to this suit. The judgment awarding possession to appellees of the three-fifths interest was no doubt based upon the view that the appellees were tenants in common with the grantors in said deed, and that, as the deed was ineffectual to pass the title of the grantors, the appellant was without title, and, being without title, could be regarded as a trespasser against whom the appellees, as tenants in common with the owners of the title to the three-fifths interest, were entitled to possession.

[4] It is a general rule that a tenant in common of a tract of land may recover the possession of the entire tract as against a mere trespasser; but we do not think that the rule applies under the facts of this case. The deed to Dickerson was admitted in evidence and in form was sufficient, but was held to be ineffective only because of the insufficiency of the certificate of acknowledgment. The grantors and their heirs for more than 50 years have recognized the deed as valid, and did not join in this suit to recover the land, or otherwise repudiate the conveyance. In these circumstances the appellant was not a mere trespasser, and the appellees are strangers to the title of appellant's vendors, and as such were not entitled to interpose as a defense to appellant's title that the defective certificate rendered the deed ineffectual. A very similar question was before our Supreme Court in Spivy v. March, 105 Tex. 473, 151 S. W. 1037, 45 L. R. A. (N. S.) 1109, and in an opinion by Chief Justice Brown it was said:

"It is not necessary for us to decide in this case whether a stranger to the title should ever be permitted to interpose this defense; but we are firmly convinced by authority and sound reasoning that, under such conditions, a court should construe the language as Mrs. Hensley (the grantor) and her heirs have construed it by their inaction for half a century. * * * We have in this case by the decision of the Court of Civil Appeals a stranger setting up a defect which the vendor refuses to assert. The injustice and unreasonable character of the proposition forbids that this court should approve it, unless required to do so by precedents that we dare not disregard. We do not find the decisions of our courts to be of that character."

Nor are we prepared to hold that the court correctly held the certificate of acknowledgment to be fatally defective. It is true that the law in force at the time of the acknowledgment of the deed required the officer to certify that he explained the instrument to the married woman whose acknowledgment he took; but the statute also provides that any certificate showing that the requisites of the law have been complied with shall be as valid as the form there prescribed. Hartley's Dig. page 131. Here the officer, instead of certifying that he fully explained the instrument, certified that "they said they were acquainted with the circumstances and transaction." The certificate shows that the husbands and wives together signed the deed, after which the wives were removed from the presence of their husbands, so that they would be entirely free from their influence, and then the married women were examined separately and apart from their husbands. It was upon this examination that the wives stated to the officer that they were acquainted with the "circumstances and transaction" and that they did not wish to retract what was done. We probably could conclude, without entering too far into the realms of conjecture, that the "circumstances and transaction" referred to were the facts connected with the sale of the land by H. W. Sudduth to Jesse Dickerson under such circumstances as to not pass the legal title, the payment of the purchase money by Dickerson, which facts were set out in the petitions filed in the probate court, and the leaving of said land out of the partition of said Sudduth's estate, because it had theretofore been sold by Sudduth to Dickerson. The petition to the probate court, signed by the married women who executed the deed

in question, recites, and shows that they knew, that their father during his lifetime had sold the land to Jesse Dickerson, and stated that they were desirous of relinquishing to said Dickerson the title thereto and that they had received payment therefor. Although the deed was executed more than half a century ago, neither the married women who executed it, nor their heirs, have since then made any claim to it; but have recognized the deed as valid. Paraphrasing the language of our Supreme Court in Spivy v. March, supra, it is safe to construe the language of the certificate as if the court were performing the duties of the officer, and if Mrs. West, Mrs. Conn, and Mrs. Lewis, upon privy examination, should use the words of this certificate, would it not reasonably appear to such court that they understood the nature of the instrument and the legal effect of their acts, and that they were satisfied?

But we do not rest our decision upon the sufficiency of the acknowledgment, as it is not necessary, but rest it upon the view, above expressed, that the appellant is entitled, as against the appellees, to remain in undisturbed possession of a three-fifths undivided interest in the land in controversy. It follows that it is our opinion that appellant, in so far as the appellees are concerned, was, under the facts of this case, entitled to remain in the undisturbed possession of a three-fifths undivided interest in the land in controversy, and that the judgment of the trial court, in so far as it ousted appellant of such possession, and divested title out of it, and vested the title thereto in appellees, was erroneous.

We are of the opinion that the judgment in favor of appellees for two-fifths undivided interest in the land should be affirmed, and that the judgment ousting the appellant and divesting it of title to three-fifths undivided interest should be reversed, and judgment be here rendered in favor of appellant therefor; and it has been so ordered.

Affirmed in part. Reversed and rendered in part.